UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE PIERCE,<br><br>                    Plaintiff,<br><br>    v.<br><br>BETH WILNER and FAMILIES IN TRANSITION, INC.,<br><br>                    Defendants. | No. 21 CV 1985<br><br>Judge Manish S. Shah |

**ORDER**

Defendants' motion to dismiss, [14], is denied. Defendants shall answer the complaint by 10/21/21. The stay on discovery is lifted and all fact discovery shall be noticed in time for completion by 2/28/22. The parties must confer and file a status report on 11/5/21 with a proposal for the remainder of the discovery schedule and a deadline for filing dispositive motions.

**STATEMENT**

A court awarded plaintiff Michelle Pierce joint custody of her son and appointed defendants Beth Wilner and Families in Transition to the role of "parenting coordinator." The parties entered into a written contract: Pierce promised to pay for defendants' parenting coordination services. Pierce says defendants breached that agreement when Wilner recommended that sole custody of Pierce's son be awarded to the child's father. Defendants move to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must construe all factual allegations as true and draw all reasonable inferences in plaintiff's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

Pierce was granted joint custody of her son in May 2010. [2-1] ¶ 14.[1] In the same order, the Circuit Court of Cook County appointed Wilner and Families in Transition as parenting coordinator and charged them with "oversee[ing] the general psychological, educational and psychiatric treatment of [Pierce's son] to ensure treatment is occurring and to ensure that such treatment is helpful." *Id.* Under the court's local rule, a parenting coordinator made recommendations "that will reduce conflict between parents and reduce unnecessary stress for the children," mediated "disputes concerning parenting issues," and suggested outside resources including psychotherapy. *Id.* ¶ 15. Parenting coordinators were not permitted to "serve as a custody evaluator in any proceeding involving one or more parties for whom the parenting coordinator has provided parenting coordinator services" and "shall not ... give a recommendation or opinion concerning the ultimate issue of fact, law, or mixed issue of fact and law as to child custody." *Id.*

The parties entered into a contract. [2-1] ¶ 19; at 33–34. The agreement said that defendant Wilner was "a clinical psychologist and trained mediator," but specified that "the parenting coordination role is NOT psychotherapy or mediation." *Id.* at 33. According to the contract, the therapist-client privilege would not apply. *Id.* at 33. Defendants promised that they would not testify in court on behalf of either parent or render an opinion regarding custody. *Id.* Pierce says defendants breached the contract by recommending that sole custody of her son be awarded to the child's father. *Id.* ¶¶ 32, 37, 51–52, 54–55, 90, 99, 108, 117. Wilner and Families in Transition made these recommendations between August 2010 and January 2011, *id.*, and Pierce made her last payment under the contract on March 5, 2012. *Id.* ¶ 25.

Pierce sues defendants under Illinois law for breach of contract, and filed her complaint in state court in December 2020. [2-1] at 4. Wilner and Families in Transition removed the case to federal court, [2], and move to dismiss the complaint. [14].[2] Defendants argue that plaintiff's claims are untimely. *Id.*

Wilner and Families in Transition say that Illinois's medical malpractice statute of limitations, 735 ILCS 5/13-212, applies because Pierce seeks to recover against Wilner, a licensed clinical psychologist. [14] ¶ 8. Defendants argue that Wilner's mediation between Pierce and her son's father and her supervision of the child's treatment were patient care. [23] ¶ 3. Pierce argues that defendants' breach did not arise out of patient care, and says that the statute of limitations for written contracts—735 ILCS 5/13-206—applies to her claims. [18] ¶¶ 6–8.

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings.

[2] This court has jurisdiction because Pierce is a citizen of Wisconsin, defendants are citizens of Illinois, and the amount in controversy is over $75,000. [2] ¶¶ 4, 7; [8] ¶¶ 1–2; 28 U.S.C. § 1332(a)(1).

Complaints "need not anticipate and overcome affirmative defenses, such as the statute of limitations," which makes dismissal of a complaint as untimely at the pleading stage an "unusual step." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (quoting *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP,* 559 F.3d 671, 674 (7th Cir. 2009)). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial)." *Id.* (citations omitted). Dismissal for untimeliness is appropriate, however, "when the complaint alleges facts sufficient to establish that the suit is indeed tardy." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (quoting *Cancer Found., Inc.*, 559 F.3d at 674–75)).

Under Illinois's medical malpractice statute of limitations, a breach of contract claim against certain medical professionals "arising out of patient care" must be brought within two years of the date when that claim accrues. 735 ILCS 5/13-212. The application of this provision to Pierce's claims depends on whether "the complaint alleges an injury arising out of patient care." *Brucker v. Mercola*, 227 Ill.2d 502, 516 (2007). Patient care is a "broad" term, meaning "the entire scope of a person's medical care and treatment." *Id.* at 524. Injuries that are causally connected to patient care (meaning injuries that originate in or are incidental to medical care and treatment) are covered by the statute, but a mere "but for" causal link is not enough. *Id.* at 523–24; *see Orlak v. Loyola Univ. Health Sys.*, 228 Ill.2d 1, 15 (2007).

It's undisputed that § 13-212 applies to certain claims against licensed clinical psychologists, like Wilner. [14] ¶ 7 (citing *Holladay v. Boyd*, 285 Ill.App.3d 1006, 1012 (1st Dist. 1996)); *see Bloom v. Braun*, 317 Ill.App.3d 720, 725 (1st Dist. 2000). As a psychologist, it seems likely that Wilner was in the business of providing patient care, and defendants are right that the role of parenting coordinator required them to keep tabs on certain medical treatments for Pierce's son. [2-1] ¶ 14. But while the majority of defendants' work may have involved patient care, they wore two hats: practicing psychology, on the one hand, and serving as a parenting coordinator, on the other.[3]

---

[3] Defendants say this case is like *Brucker v. Mercola*, 227 Ill.2d 502 (2007), but *Brucker* is distinguishable. *Brucker* involved "an osteopath who use[d] nutritional supplements to treat his patients." 227 Ill.2d at 529–30. The osteopath diagnosed a patient with a condition, and sold her a medication for that illness that injured the patient. *Id.* The court held that that injury arose from patient care, and found that the doctor did not wear "two hats" by both practicing medicine and selling supplements. *Id.* at 524–27. In finding the doctor's retail sales continuous with his other medical treatments, the court noted that the osteopath made almost all of his supplement sales to pre-existing patients and did not hold himself out to non-patients as a retailer. *Id.* Here, by contrast, defendants' parenting coordination work was arguably distinct from any patient care they may have provided at the time. Defendants were appointed and contracted to provide parenting coordination services to litigants in a custody dispute, not to provide medical services to preexisting patients. [2-1] ¶¶ 14–15; at 33–34. Plaintiff and her son didn't have conditions that they asked defendants to treat and were never patients of defendants.

In the contract, defendants held themselves out as parenting coordinators, not providers of psychotherapy. [2-1] at 33. And the parenting coordination services that they provided were one step removed from medical care and treatment. *Id.* ¶¶ 14–15. Wilner and Families in Transition were charged with ensuring that Pierce's son received treatment from *other* providers, but they were not themselves providing treatment, either to plaintiff or to her son. *Id.* ¶ 14. Defendants were also required to mediate between Pierce and her son's father, *id* ¶ 15, but mediation is not patient care.

While "arising out of patient care" is a broad term, it doesn't encompass all claims adjacent to medical care and treatment, only those that are causally related to patient care. *See Stiffler v. Lutheran Hosp.*, 965 F.2d 137, 141 (7th Cir. 1992)) (claims against a medical provider's gift shop by a consumer, rather than a patient, would not fall under § 13-212); *Kaufmann v. Schroeder*, 241 Ill.2d 194, 200–01 (2011) (an injury that arose from conduct other than medical care that was not motivated by a "medical reason" did not fall under § 13-212). The complaint does not allege that Pierce's injuries were caused by patient care that Pierce or her son received, and so it does not establish untimeliness under § 13-212.

Under Illinois's written contracts statute of limitations, 735 ILCS 5/13-206, Pierce had ten years from the date of her final payment to defendants to file her claim. *See* 735 ILCS 5/13-206 (If "any payment" has been made in writing on a contract "within or after the period of 10 years [since a cause of action accrued], then an action may be commenced thereon at any time within 10 years after the time of such payment."). Pierce alleges that defendants breached the contract in 2010 and 2011, [2-1] ¶¶ 90, 99, 108, 117, that she made her final payment under the agreement on March 5, 2012, [2-1] ¶ 25, and that she filed her complaint within ten years after that payment on December 31, 2020. *Id.* at 4. Defendants do not contend that this suit is untimely if § 13-206 applies; they only argue a defense based on § 13-212. Plaintiff has alleged a conceivable set of facts, consistent with the complaint, that would defeat that statute-of-limitations defense, so issues of timeliness are left for summary judgment or trial. *Sidney Hillman Health Ctr. Of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

Defendants' motion to dismiss, [14], is denied.

ENTER:

Date:   October 7, 2021

_____
Manish S. Shah
U.S. District Judge